**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

JET AIRPARTS, LLC,

        *Plaintiff,*

vs.                                                                 Case No. 18-CV-1189-EFM-KGG

REGIONAL ONE, INC.,

        *Defendant.*

**MEMORANDUM AND ORDER**

Defendant Regional One, Inc. removed this case on June 28, 2018, and filed a motion to stay litigation and compel arbitration on the following day. Plaintiff Jet AirParts, LLC did not initially respond to Defendant's motion to stay and compel arbitration, but instead filed a motion to remand arguing that this Court lacks subject-matter jurisdiction because the amount in controversy does not exceed $75,000. On September 11, 2018, Plaintiff filed a motion to stay Defendant's motion to compel arbitration and for leave to file its response to Defendant's motion to stay litigation and compel arbitration out of time. The Court granted Plaintiff's request for leave to file its response out of time, but did not rule on Plaintiff's motion to the extent it sought to stay Defendant's motion to compel arbitration. This matter comes before the Court on Plaintiff's Motion to Remand (Doc. 10), Defendant's Motion to Stay Case, including Answer Date and Jury Trial Demand, Application for Arbitration, and Motion for Relief under 28 U.S.C. § 1927 (Doc.

6), and Plaintiff's Motion to Stay (Doc. 14). For the reasons stated below, the Court denies Plaintiff's motion to remand, denies Defendant's motion to stay and compel arbitration and for relief under 28 U.S.C. § 1927, and denies as moot Plaintiff's motion to stay.

## I. Factual and Procedural Background

### A. March 2018 lawsuit

On March 26, 2018, Plaintiff filed a petition in the Cowley County District Court alleging that Defendant breached its contract with Plaintiff and committed tortious interference with a contract Plaintiff had with a vendor. Plaintiff alleged that it had an opportunity to purchase airplane parts ("Material") from a vendor, with an understanding that the vendor would buy back parts from the Material once inspected and certified. The vendor's intended purchases were expected to cover a significant portion of the purchase price of the Material. Defendant financed the purchase of the Material under the parties' Consignment Agreement. Under the Consignment Agreement, Plaintiff agreed to a commission schedule of 10% of the net proceeds of the Material parts sales up to $3.4 million and then 40% thereafter. Plaintiff agreed to this commission schedule in reliance on the fact that a significant portion of the Material would be sold back to the vendor. Prior to execution of the Consignment Agreement, the vendor sold or scrapped parts from the Material and only delivered part of the Material to Plaintiff in Kansas. Defendant entered into a separate agreement with the vendor to receive airplane parts of equivalent value to replace the missing parts from the Material. The vendor delivered those parts to Defendant's place of business in Florida and Defendant did not make those parts available to Plaintiff for inspection, evaluation, repair, overhaul, or sale. Instead, Defendant sold some or all of the parts, but did not credit the sales under the Consignment Agreement or pay Plaintiff a commission.

Plaintiff's tortious interference claim alleged that it had an agreement with the vendor to buy back inspected and certified parts as needed from the Material, that the vendor's intended purchases were expected to account for a substantial part of the $3.4 million in sales required for Plaintiff to reach the 40% commission on further sales, and that Defendant engaged in several arguments and disputes with the vendor such that the vendor refused to purchase parts from the Material so long as Defendant owned the Material. Plaintiff alleged that Defendant's actions caused it to suffer damages in lost commissions from anticipated sales to the vendor as well as reduced commissions on sales of the Material.

Plaintiff's breach of contract claim alleged that Defendant received parts to replace those that were to be included in the Material and that Defendant failed to make them available to Plaintiff for sale. Plaintiff sought damages in the amount of a 40% commission on the net proceeds from the sale of these parts.[1]

On May 2, 2018, Defendant removed the action to federal court on the basis of diversity jurisdiction. It filed a motion to stay deadlines and compel arbitration six days later.[2] On May 22, 2018, Plaintiff filed a Notice of Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), and dismissed the case without prejudice.

**B.      May 2018 lawsuit**

On the same day that Plaintiff voluntarily dismissed the first federal lawsuit, it filed a second state court action in Cowley County District Court. Plaintiff's second petition repeated several of the factual allegations contained in the first. Plaintiff again alleges that it had an

---

[1] Plaintiff also sought storage fees for parts stored at its warehouse after the termination of the Consignment Agreement, but did not explicitly include its request for storage fees in either of its counts.

[2] *See Jet AirParts, LLC v. Reg'l One, Inc.*, No. 18-1127 (D. Kan.).

opportunity to purchase Material from a vendor, with an understanding that the vendor would buy back parts from the Material once inspected and certified by Plaintiff. Defendant financed the purchase of the Material under the Consignment Agreement, which provided a commission schedule that the parties agreed to recognizing that a significant portion of the Material would be sold back to the vendor. Defendant engaged in several disputes with the vender such that the vendor refused to purchase any parts from the Material. While the second petition contains several of the same factual allegations, it does not repeat all of the allegations contained in the first petition, it contains additional allegations, and it contains different claims for relief.

Plaintiff alleges that the Consignment Agreement expired on February 7, 2016, that the Consignment Agreement shall not automatically renew unless by agreement between the parties in writing, and that the parties did not agree to renew the Consignment Agreement. After the Agreement expired Plaintiff continued to sell parts of the Material. From February 2016 through December 2017, Plaintiff sold parts from the Material to third parties for $857,048 without any objection from Defendant. Plaintiff retained 40% of the sales on these parts as commission, with the remainder payable to Defendant. In January 2018, a third party offered to purchase the remaining Material in Plaintiff's possession for $180,000. Defendant objected to this sale and will not allow Plaintiff to consummate the transaction.

While the first petition briefly notes that Plaintiff is storing the Material for Defendant, the second petition adds additional factual allegations relating to storage. It claims that Plaintiff stores parts for other customers and charges a storage fee unless it receives commissions on the sale of the parts, and claims that its average storage charge for the number of parts in the remaining Material was $2,500 per month for the 27 preceding months.

Plaintiff's second petition does not allege that Defendant committed a tortious interference with contract, and does not allege that Defendant breached the Consignment Agreement. Its prayer for relief seeks an order either (1) directing Defendant to approve the sale of the Material or for a judgment in amount of the lost commission on the sale Defendant allegedly refused to approve in 2018, or alternatively, (2) judgment in an amount equal to the alleged storage fees incurred since the expiration of the Consignment Agreement.

Defendant removed the second state court action to federal court on June 28, 2018, again on the basis of diversity jurisdiction. In support of removal, Defendant included an affidavit from its general counsel, Joseph Schwantes. The affidavit states that, "the claims Jet Airparts, LLC made in its petition, if proven true, would meet or exceed $75,000.00 in claimed damages." Specifically, Schwantes alleges that the Material Plaintiff seeks to sell is worth considerably more than $180,000 and "if Jet AirParts LLC's allegation that it is entitled to a 40% commission were proven true, it would be entitled to $75,000 or more in damages." It also claims that if Jet Airparts "is entitled to recover $2,500 per month in storage fees, . . . then it would be entitled to $75,000 or more in damages."

On August 2, 2018, Plaintiff filed a motion to remand asserting that this Court lacks subject-matter jurisdiction over the claims. Specifically, Plaintiff argues that the amount in controversy necessary for diversity jurisdiction has not been met, and accordingly, this case must be remanded to state court.[3]

---

[3] Both the face of the petition and the notice of removal indicate that the parties are diverse for purposes of 28 US.C. § 1332(a)(1).

**C.    Motion to compel arbitration and for relief under 28 U.S.C. § 1927**

Shortly after removing the second state court petition, Defendant filed a motion to stay litigation and compel arbitration of Plaintiff's claims.  Defendant argues that the claims in this lawsuit fall under the parties' agreement to arbitrate contained in the Consignment Agreement. The Consignment Agreement includes a dispute resolution provision, which states:

> 16.  **DISPUTE RESOLUTION**.  If a dispute arises relating to the Agreement and related damages, if any, (the "Dispute") the Parties shall first seek to resolve the Dispute amicably.
>
> 16.1.  If the Parties are unable to resolve the Dispute amicably within thirty (30) days of one Party giving notice to the other of the Dispute then either Party may request that the Dispute be settled and finally determined by binding arbitration in Dallas County, Texas, or other location as agreed by the Parties, in accordance with Commercial Arbitration Rules of the American Arbitration Association, by one or more arbitrators appointed in accordance with said Rules.   The arbitrator(s) may hold pre-hearing conferences or adopt other procedures.   Reasonable examination of opposing witnesses in an oral hearing will be permitted.  Each Party will bear its own cost of presenting or defending its position in the arbitration. The award of the arbitrator(s) shall be final, binding, and non-appealable and judgment may be entered thereon in any court having jurisdiction hereof.  The Agreement shall be interpreted and applied in accordance with the substantive laws of the State of Florida, without giving effect to its conflict of law provisions, rules, or procedures (except to the extent that the validity, perfection, or creation of any lien or security interest hereunder and the exercise of rights or remedies with respect of such lien or security interest for a particular item of the Material are governed by the laws of a jurisdiction other than Florida).
>
> 16.2.  Each of the Parties intend that the dispute resolution process set forth in this Article shall be the Parties' exclusive remedy for any Dispute.  All statements made in connection with the dispute resolution process set forth in this Article shall not be disclosed to any third party except as required by law or subpoena.
>
> 16.3.  Either Party may at any time, without inconsistency with this Article, seek from a court of competent jurisdiction any equitable, interim, or provisional relief to avoid irreparable harm or injury.

The Consignment Agreement also includes provisions regarding its term and termination that state:

> 9. **TERM**.  The term of this Agreement shall remain in effect for thirty-six (36) months commencing on the date first written above.  This Agreement shall not automatically renew unless by agreement between the Parties in writing.
>
> . . . .
>
> 9.2.  <u>Winding Down Upon Conclusion of Agreement.</u>  Upon conclusion, through either expiration, termination or cancellation, of this Agreement, the Parties shall cooperate in the orderly winding down of the terms and conditions of this Agreement to the mutual satisfaction of both Parties.  Jet AirParts shall notify Regional One in writing when the Material is available for re-delivery to Regional One and shall ship such Material to Regional One's facilities or to another location to be advised by Regional One at Jet AirParts' expense.
>
> 9.3.  <u>Survival</u>.  Section 10 ("Warranties"), 11 ("Taxes"), 13 ("Governing Law"), 15 ("Compliance with Laws"), and 17 ("Excusable Delay") shall survive termination, whether through expiration or cancellation, of this Agreement for as long as necessary to accomplish the purposes of the provisions.

The Agreement calls for the application of Florida law to "[t]he terms of this Agreement and the transactions hereunder."  Defendant argues that the arbitration agreement in the Consignment Agreement covers the claims in the current lawsuit and that Plaintiff must submit those claims to arbitration.  Plaintiff argues that its current claims arose after the Consignment Agreement expired, that no written agreement to arbitrate existed at the time the claims in this case arose, and that its claims are not subject to the Consignment Agreement's arbitration provision.  In a separate filing, it also asked that the Court stay ruling on the request to compel arbitration until after ruling on the motion to remand.[4]

---

[4] Plaintiff asked that the Court "grant it a stay to defendant's motion to compel arbitration and for relief and leave to file its response out of time 14 days after the Court issues its decision on the motion to remand."  Plaintiff filed its Response to Defendant's motion on September 27.  Accordingly, Plaintiff's request to stay is moot.

Defendant's motion also seeks relief under 28 U.S.C. § 1927 for Plaintiff's alleged unreasonable and vexatious multiplication of proceedings. Defendant asserts that Plaintiff acted improperly in dismissing its first lawsuit and filing a second lawsuit, and argues that Plaintiff should have simply amended his claims in the first lawsuit and its failure to do so stems from an overt attempt to avoid federal jurisdiction. Plaintiff's actions allegedly resulted in a duplication of efforts on the part of Defendant and extended Plaintiff's time to seek remand and respond to the motion to compel. Plaintiff argues that it did not multiply proceedings because the claims in the two lawsuits relate to different events and that the claims in the second lawsuit did not arise until after the first lawsuit had been filed.

## II.    Discussion

### A.    Motion to Remand

#### 1.    *Legal Standard*

Generally, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."[5] "Federal removal jurisdiction is statutory in nature and is to be strictly construed."[6] " 'There is a presumption against removal,' . . . [and] doubts about the validity of removal are resolved in favor of remand."[7] The Court must remand the action "[i]f at any time

---

[5] 28 U.S.C. § 1441(a).

[6] *Amur v. Transamerica Life Ins. Co.*, 2010 WL 4180459, at *2 (D. Kan. 2010) (citation omitted).

[7] *Id.* (quoting *Laughlin v. Kmart Corp.*, 50 F.3d 871, 873 (10th Cir. 1995) and citing *Fajen v. Found. Reserve Ins. Co.*, 683 F.2d 331, 333 (10th Cir. 1982)).

before final judgment it appears that the district court lacks subject matter jurisdiction."[8]  "Subject matter jurisdiction under 28 U.S.C. § 1332(a) requires, in addition to diversity of citizenship, an amount in controversy in excess of '$75,000, exclusive of interest and costs.' "[9]

Title 28, U.S.C. § 1446 governs the procedures for removing a civil action.  It addresses removal when the state court pleading identifies a specific damages request:

(2) If removal of a civil action is sought on the basis of the jurisdiction conferred by section 1332(a), the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy, except that--

(A) the notice of removal may assert the amount in controversy if the initial pleading seeks--

(i) nonmonetary relief; or

(ii) a money judgment, but the State practice either does not permit demand for a specific sum or permits recovery of damages in excess of the amount demanded; and

(B) removal of the action is proper on the basis of an amount in controversy asserted under subparagraph (A) if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a).[10]

"Under the preponderance standard, defendants seeking to remove must prove jurisdictional facts by a preponderance of the evidence."[11]  "Once a defendant meets this burden, remand is appropriate only if the plaintiff can establish that it is legally impossible to recover" in excess of $75,000.[12]

---

[8] 28 U.S.C. § 1447(c).

[9] *McPhail v. Deere & Co.*, 529 F.3d 947, 952 (10th Cir. 2008) (quoting 28 U.S.C. § 1332(a)).

[10] 28 U.S.C. § 1446(c)(2).

[11] *Frederick v. Hartford Underwriters Ins. Co.*, 683 F.3d 1242, 1247 (10th Cir. 2012) (citing *McPhail*, 529 F.3d at 954).

[12] *See id.* (citations omitted).

*2. Analysis*

Plaintiff asks that the Court remand this case for lack of subject-matter jurisdiction. Specifically, Plaintiff argues that this Court does not have subject-matter jurisdiction because the amount in controversy does not exceed $75,000 and thus, the requirements for diversity jurisdiction have not been met.[13]  Plaintiff's petition seeks alternative relief.  First, it seeks either an order directing Defendant to approve the sale of the remaining Material for $180,000 or an award of $72,000 representing Plaintiff's lost commission on the offer to purchase the Material for $180,000.  Second, and in the alternative, Plaintiff requests an award of $67,500 based on the fact that Plaintiff has been storing the Material at its facilities since the expiration of the Agreement.  Although it appears that Plaintiff continues to store the Material, Plaintiff only requests storage fees for a period of 27 months, from February 2016 through May 2018.  Plaintiff's petition states that it "seeks no further relief from the Court."

Since Defendant removed this case based on diversity jurisdiction and Plaintiff's initial pleading includes a claim for relief that does not exceed $75,000, Defendant must prove the requisite jurisdictional facts by a preponderance of the evidence.[14]  Defendant argues that Plaintiff cannot voluntarily limit its damages below $75,000 to avoid federal court and that if Plaintiff were

---

[13] Defendant contends that this Court has subject-matter jurisdiction based on diversity of citizenship under 28 U.S.C. § 1332(a).  The sole issue presented by Plaintiff's motion to remand is whether the amount in controversy is satisfied.  The petition alleges that the parties are diverse, and Plaintiff does not argue otherwise.

[14] *See* 28 U.S.C. § 1446(c)(2).  The Court declines to apply the "reasonable certainty" standard cited by the parties.  Although both parties cite this standard, the 2011 amendments to § 1446 impose a preponderance of the evidence standard.

entitled to $2,500 per month for storage fees since the expiration of the parties' Agreement, as alleged in the petition, Plaintiff would be entitled to more than $75,000 in damages.[15]

If Plaintiff did not attempt to limit its request for storage fees, but instead sought storage fees for the entire time that it has stored the Material after the expiration of the Agreement, the amount in controversy would clearly be met.[16]  The record before the Court shows that Plaintiff continues to store the Material in question and has been storing it since the expiration of the Agreement.  It has been over 32 months since the alleged expiration of the Agreement.  If Plaintiff is entitled to $2,500 per month for storage fees since the expiration of the Agreement, as alleged in Plaintiff's petition, it would be entitled to an amount in excess of $75,000.

Plaintiff, however, requests storage fees only for a specific time frame and "seeks no further relief from the Court."  Plaintiff argues that "Defendant confuses the amount in controversy for what the plaintiff may be entitled to receive," and suggests that a plaintiff "may resort to the expedient of suing for less than the jurisdictional amount, and *though he would be justly entitled*

---

[15] Defendant argues that it has established that the amount in controversy would meet or exceed $75,000 because (1) it has "disprove[n] plaintiff's bald pronouncement that only $72,000 is at stake for plaintiff's claim on the failed sale," and, with regard to Plaintiff's alternative claim for relief, (2) it has come forward with uncontroverted evidence that the claim for storage fees would exceed $75,000.  Because the Court finds that the amount in controversy for Plaintiff's request for storage fees exceeds $75,000, it declines to address Defendant's remaining arguments.

[16] When determining the amount in controversy, the Court is not limited to considering damages already incurred, but rather may consider damages that continue to accrue.  *See e.g.*, *Robertson v. Asplundh Tree Expert Co.*, 2017 WL 4099479, at *3 (D. Kan. 2017) (calculating potential award of back wages from estimate of trial date and not from the date the petition was filed).  For example, when a plaintiff seeks a damages award below $75,000, plus attorneys' fees, the Court may consider the amount of attorneys' fees likely to be incurred in pursing the litigation and not just the amount of fees incurred at the time the plaintiff filed the complaint.  *See e.g.*, *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998) (allowing reasonable estimate of attorney's fees likely to be incurred in calculating the necessary jurisdictional amount in a removal proceeding, and not limiting the calculation to fees incurred at the time of the complaint).

*to more, the defendant cannot remove*."[17]  This argument fails to account for the revision to § 1446(c) effectuated by the Federal Courts Jurisdiction and Venue Clarification Act of 2011.[18]

The 2011 amendment to § 1446(c) established "that 'the sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy,' subject to certain exceptions."[19]  One such exception is where "the State practice . . . permits recovery of damages in excess of the amount demanded."[20]  As previously recognized in this District, "Kansas 'permits recovery of damages in excess of the amount demanded.' "[21]  Indeed, Kansas law provides that every final judgment other than a default judgment "should grant relief to which each party is entitled, *even if the party has not demanded that relief in its pleadings*."[22]

Plaintiff attempts to limit its request for damages to recover storage fees for some, but not all of the months that it has stored the Material since the Agreement expired.  K.S.A. § 60-254(c) allows Plaintiff to receive the full award of damages it would be entitled to for storing the Material, even though Plaintiff has only requested a portion of such damages.  Accordingly, under the second exception in § 1446(c)(2)(A), Defendant "may assert the amount in controversy."  As noted above, but for Plaintiff's attempt to limit its request to damages, the amount in controversy would clearly exceed $75,000.[23]

---

[17] Doc. 11, p. 6 (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 294 (1938)) (emphasis added by Plaintiff).

[18] Pub. L. No. 112-63, § 103(b), 125 Stat. 760, 762 (2011).

[19] *Butler v. Target Corp.*, 2012 WL 5362974, at *2 (D. Kan. 2012) (quoting *Frederick*, 683 F.3d at 1247 n.3).

[20] *Id.*; 28 U.S.C. § 1446(c)(2)(A)(ii).

[21] *Butler*, 2012 WL 5362974, at *2 (quoting 28 U.S.C. § 1446(c)(2)(A)(ii)).

[22] K.S.A. § 60-254(c) (emphasis added).

[23] Plaintiff asserts that it seeks only 27 months of storage because the parts are no longer being held at Regional One, Inc.'s request.  However, it is not necessary that Defendant specifically request Plaintiff to hold the

Because Kansas law allows Plaintiff to recover damages in excess of the amount demanded in its petition, § 1446(c)(2) allows Defendant to prove the amount in controversy. The Court finds that a preponderance of the evidence demonstrates that the amount in controversy—the amount of storage fees put in controversy in this action—exceeds $75,000. Thus, the Court has subject-matter jurisdiction over this case, and Plaintiff's motion to remand is denied.

## B. Motion to Compel Arbitration

### 1. Legal Standard

Arbitration is a matter of contract, and a party must arbitrate only those disputes that they have agreed to submit to arbitration.[24] If a contract contains an arbitration provision, there is a presumption of arbitrability.[25] Whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[26] Whether there is an enforceable arbitration agreement is a matter of state contract law to be decided by the Court.[27] A defendant seeking to compel arbitration has the initial burden to show enough evidence of an enforceable agreement to arbitrate.[28] If the defendant meets this burden, the plaintiff must

---

Material for Plaintiff to recover fees for storing the Material for Defendant. Under Kansas law, the basic elements of unjust enrichment include: "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value." *Haz-Mat Response, Inc. v. Certified Waste Servs. Ltd.*, 259 Kan. 166, 910 P.2d 839, 847 (1996) (quotation omitted). The Court makes no determination regarding the merits of Plaintiff's claims, but merely recognizes that "the amount in controversy" exceeds $75,000.

[24] *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).

[25] *Id.* at 650; *Gratzer v. Yellow Corp.*, 316 F. Supp. 2d 1099, 1103 (D. Kan. 2004).

[26] *AT & T Techs.*, 475 U.S. at 649; *Gratzer*, 316 F. Supp. 2d at 1103.

[27] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Hill v. Ricoh Ams. Corp.*, 603 F.3d 766, 777 (10th Cir. 2010).

[28] *SmartText Corp. v. Interland, Inc.*, 296 F. Supp. 2d 1257, 1263 (D. Kan. 2003).

show a genuine issue of material fact as to the validity of the agreement.[29]  Doubts should be resolved in favor of arbitration.[30]

The Federal Arbitration Act provides that arbitration agreements are valid and enforceable subject to the same legal grounds for the revocation of any contract.[31]  A federal district court may compel arbitration when it would have jurisdiction in the underlying dispute.[32]  Upon motion by one of the parties, the Court must stay litigation on a matter that the parties have agreed to arbitrate.[33]

> 2. *Analysis*

The Consignment Agreement contains an arbitration provision stating that disputes "relating to the Agreement and related damages" will be submitted to binding arbitration. Defendant asserts that Plaintiff's claims must be submitted to arbitration because "plaintiff's theory of the case rests in large part on its perceived right to a 40% commission under the terms of the Consignment Agreement," and the request for storage fees relates to the Consignment Agreement since Plaintiff alleges the Consignment Agreement obligated it "to store and maintain the Material at its warehouse to preclude damage or abnormal deterioration."  It argues that any potential duty owed to Plaintiff "springs from the parties' contractual relationship" and must be arbitrated under the Agreement.  Plaintiff contends that its current claims arise out of events

---

[29] *Id.*

[30] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 298 (2010) (citing *First Options*, 514 U.S. at 945); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1275 (10th Cir. 2010) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983)).

[31] 9 U.S.C. § 2.

[32] 9 U.S.C. § 4.

[33] 9 U.S.C. § 3.

occurring after the Consignment Agreement expired, that the arbitration clause expired with the Consignment in February 2016, and that no agreement exists to arbitrate the current claims. As the party seeking to compel arbitration, Defendant must carry "the burden of demonstrating a valid arbitration agreement."[34]

In analyzing "whether an agreement to arbitrate has been reached," the Court looks to state law principles of contract formation—here, the Court looks to Florida law.[35] Under Florida law, agreements to arbitrate "are creatures of contract;" thus, "courts look to the intent of the parties as manifested in the contract to determine whether an arbitration clause compels arbitration of a particular dispute."[36] Florida "[c]ourts generally favor such provisions, and will try to resolve an ambiguity in an arbitration provision in favor of arbitration."[37] But, "the presumption in favor of post-expiration arbitration of matters is 'limited by the vital qualification that arbitration [is] of matters and disputes arising out of the relation governed by contract.' "[38] Thus, while "an arbitration provision does not require any type of 'savings clause' to survive contract termination" and "the duty to arbitrate does not necessarily end when a contract is terminated," arbitration under

---

[34] *Fundamental Admin. Servs., LLC v. Patton*, 504 F. App'x 694, 698 (10th Cir. 2012) (quotation omitted).

[35] Defendant asserts that Florida law governs the terms of the agreement given the choice-of-law provision contained in the Consignment Agreement. Plaintiff does not argue otherwise and Kansas law generally honors a contractual choice-of-law provision. *See e.g.*, *Webster Capital Fin., Inc. v. Newby*, 2013 WL 2389449, at *1 (D. Kan. 2013) ("Where a contract contains a choice-of-law clause, the court will apply the forum state's choice-of-law rules. Under Kansas law, parties to a contract may select the law that will govern interpretation of their agreement, and Kansas courts will generally honor that choice.") (quotations, alteration, and citations omitted). Accordingly, the Court looks to Florida law to interpret the terms of the Consignment Agreement.

[36] *O'Keefe Architects, Inc. v. CED Const. Partners, Ltd.*, 944 So. 2d 181, 185 (Fla. 2006) (citation omitted).

[37] *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013) (citations omitted).

[38] *Milfort v. Comcast Cable Commc'ns. Mgmt. LLC*, 309 F. Supp. 3d 1268, 1273 (S.D. Fla. 2018) (quoting *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204 (1991)).

an expired contract will only be proper if "the dispute concerns matters arising under the contract."[39]

The Florida Supreme Court has recognized that use of the words "relating to" in an arbitration provision typically indicates that the agreement to arbitrate is "broad in scope."[40] Indeed, "[t]he addition of the words 'relating to'" in the phrase "arising out of or relating to" serves to "broaden[] the scope of an arbitration provision to include those claims that are described as having a 'significant relationship' to the contract."[41] The Florida Supreme Court has described the "significant relationship" requirement as follows:

> A "significant relationship" between a claim and an arbitration provision does not necessarily exist merely because the parties in the dispute have a contractual relationship. Rather, a significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship. In contrast, a claim does not have a nexus to a contract if it pertains to the breach of a duty otherwise imposed by law or in recognition of public policy, such as a duty under the general common law owed not only to the contracting parties but also to third parties and the public.[42]

---

[39] *Auchter Co. v. Zagloul*, 949 So. 2d 1189, 1194 (Fla. Dist. Ct. App. 2007) (citations omitted) (addressing only whether the arbitration provisions were valid when appellant sought to invoke them as no party suggested that the issues in dispute were not arbitrable).

[40] *Jackson*, 108 So. 3d at 593.

[41] *Id.*

[42] *Id.* (citing *Seifert v. U.S. Home Corp.*, 750 So. 2d 633, 637-39 (Fla. 1999)).

"The mere fact that the dispute would not have arisen but for the existence of the contract and consequent relationship between the parties is insufficient by itself to transform a dispute into one 'arising out of or relating to' the agreement."[43]

Here, Defendant seeks to characterize Plaintiff's current actions as actions based on the Consignment Agreement, but a review of the petition shows that Plaintiff pursues actions based on conduct occurring after the expiration of the Consignment Agreement. Plaintiff asserts that the Consignment Agreement expired on February 7, 2016, and that the parties made no oral or written agreement to extend the Agreement. Indeed, the Consignment Agreement states that it "shall not automatically renew unless by agreement between the Parties in writing." Defendant has identified no evidence suggesting that the parties extended the Consignment Agreement and Plaintiff specifically alleges that they did not.

Plaintiff alleges that it sold parts of the Material after the expiration of the Agreement from February 2016 through December 2017, without objection from Defendant, and that it retained 40% of the sales as a commission, with the remainder payable to Defendant. Plaintiff appears to allege that after the expiration of the Consignment Agreement, the parties had a business relationship—not governed by the Consignment Agreement—and that under that relationship Defendant should have approved of the sale of certain Material, or alternatively, should be compelled to compensate Plaintiff for the benefit it derived from Plaintiff storing its Material after the expiration of the Agreement.

---

[43] *Seifert*, 750 So. 2d at 638 (citations omitted).

While Plaintiff seeks "specific performance," it does not ask for "specific performance of the Consignment Agreement" as alleged by Defendant.[44]  Defendant argues that "[t]he right to storage fees arises (if at all) solely as a result of contract," but it does not explain what provision of the Consignment Agreement this right arises from.  A review of the Consignment Agreement reveals that Plaintiff was required to store the Material at its cost during the term of the Consignment Agreement—it does not purport to authorize or prohibit an award for storage costs under the circumstances.  Plaintiff does not seek storage fees for any point in time during the term of the Consignment Agreement.  It seeks storage fees as an alternate ground for relief based on the parties' post-Consignment Agreement business activities.

Finally, although Plaintiff provides factual background in its Petition relating to the Consignment Agreement, it does not assert that any right arising under the Consignment Agreement has been violated, that it holds any entitlement based on the Consignment Agreement, or that Defendant breached any duty arising under the Consignment Agreement.  Plaintiff's claims appear grounded entirely upon events occurring after the expiration of the Consignment Agreement.

The Court cannot conclude, based on the current record, that the parties intended for the arbitration provision to govern the parties' future business relations after the expiration of the Consignment Agreement.  While the parties may not have entered into an additional relationship if they had not previously been parties to the Consignment Agreement, that is insufficient to

---

[44] Defendant alleges that the second lawsuit requests "the Court to 'order specific performance' of the Consignment Agreement or 'award plaintiff lost commission' under the terms of the Consignment Agreement." Plaintiff's second petition, however, does not state that it seeks specific performance or lost commission under the *Consignment Agreement*—Defendant inserts the phrase Consignment Agreement in characterizing Plaintiff's requests for relief.

conclude that the claims constitute a dispute "relating to" the Consignment Agreement. Rather, similar to *Seifert*, "[n]one of the allegations assert that [Defendant's] duties or obligations arose from or were governed by the contract."[45] Defendant provides little more than conclusory allegations that Plaintiff's claims relate to the Consignment Agreement and it has not met its burden to show that Plaintiff agreed to arbitrate the claims presented in this suit. Defendant's motion to compel arbitration is denied.

## C.    Relief under 28 U.S.C. § 1927

### 1.    *Legal Standard*

Title 28, U.S.C. § 1927 authorizes an award of attorneys' fees and costs when an attorney has unreasonably and vexatiously multiplied proceedings. It states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.[46]

This Court has discretion when determining whether to award attorneys' fees under § 1927.[47] The power of the Court to impose costs under this section "must be strictly construed and utilized only in instances evidencing a 'serious and standard disregard for the orderly process

---

[45] *Seifert*, 750 So. 2d at 642. Unlike *Seifert*, Plaintiff does include factual allegations in its petition referring to the Consignment Agreement; these allegations, however, do not appear necessary for the claims asserted in this case, but rather, appear to provide additional background information.

[46] 28 U.S.C. § 1927.

[47] *See AeroTech, Inc. v. Estes*, 110 F.3d 1523, 1528 (10th Cir. 1997).

of justice.' "[48]  "This is an extreme standard."[49]  "[C]ourts must strictly construe the statute to guard against dampening the legitimate zeal of an attorney in representing his client."[50]

2.    *Analysis*

Defendant argues that the Court should provide it relief for Plaintiff's vexatious and unreasonable multiplication of proceedings.  Based on the record before the Court, however, it does not appear as though Plaintiff has engaged in a "serious and standard disregard for the orderly process of justice."[51]  The claims pursued in this action differ from those pursued in the prior action, and while Plaintiff could have chosen to amend his complaint to replace its prior claims with its current claims, its failure to do so here does not rise to the level necessary to justify an award of attorneys' fees.  Defendant's request for relief under 28 U.S.C. § 1927 is denied.

### III.    Conclusion

The Court denies Plaintiff's motion to remand because the amount in controversy exceeds $75,000 and Plaintiff may not avoid jurisdiction by electing to pursue less than it would otherwise be entitled to receive if successful on its claim.  The Court denies Defendant's motion to stay, to compel arbitration, and for relief under 28 U.S.C. § 1927, as Defendant has failed to show an

---

[48] *Dreiling v. Peugeot Motors of Am. Inc.*, 768 F.2d 1159, 1165 (10th Cir. 1985) (quoting *Kietel v. Las Vegas Hacienda, Inc.*, 404 F.2d 1163, 1167 (7th Cir. 1968)).

[49] *AeroTech*, 110 F.3d at 1528 (quotation marks and quotation omitted).

[50] *Baca v. Berry*, 806 F.3d 1262, 1268 (10th Cir. 2015) (quotation marks, alterations, and quotation omitted).

[51] *See Dreiling*, 768 F.2d at 1165 (quotation omitted).

agreement to arbitrate the claims present in this lawsuit and Plaintiff has not unreasonably and vexatiously multiplied proceedings. Finally, the Court denies Plaintiff's motion to stay as moot.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Remand (Doc. 10) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Stay Litigation, Including Answer Date and Jury Trial Demand, Application for Arbitration, and Motion for Relief under 28 U.S.C.§ 1927 (Doc. 6) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant is given 14 days from the date of this Order in which to file its answer or other responsive pleading and any jury trial demand.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Stay (Doc. 14) is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated this 30th day of October, 2018.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE